IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION—FLINT

IN RE:                                                CHAPTER 13

JEFFREY DAVID HURLEY                    CASE NO.  10-35686-dof
And LYN MARIE HURLEY,

      Debtors.

_____/

DONALD K. CURRIE REVOCABLE TRUST
U/A/D 07/28/1998

      Plaintiff,                          Adversary Proceeding No. _____

v.

JEFFREY DAVID HURLEY,
and LYN MARIE HURLEY,

      Defendants.

_____

## COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. § 523

    Now Comes the Donald K. Currie Revocable Trust u/a/d 07/28/1998 ("Currie Trust" or "Plaintiff"), by Howard & Howard Attorneys PLLC, and for its Complaint to Determining Non-Dischargeability of Debts Pursuant to 11 U.S.C. § 523 (the "Complaint"), states as follows:

### PARTIES, JURISDICTION, AND VENUE

    1.    This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure and seeks a judgment of non-dischargeability of debts owed by Jeffrey David Hurley ("Jeffrey Hurley") and Lyn Marie Hurley ("Lyn Hurley") (collectively referred to herein as the "Hurleys" or "Debtors") pursuant to 11 U.S.C. § 523.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 because this is a civil proceeding arising in and relating to the above-captioned Chapter 13 case.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) including, *inter alia*, §§ (A), (I), and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Plaintiff the Currie Trust is a revocable living trust established by Donald K. Currie, deceased.

6. Upon information and belief, Defendant Lyn Hurley is an individual residing at 5378 Wilson Road, Columbiaville, Lapeer County, Michigan.

7. Upon information and belief, Defendant Jeffrey Hurley is the husband of Lyn Hurley and is an individual residing at 5378 Wilson Road, Columbiaville, Lapeer County, Michigan.

## FACTS

8. In 1991, Donald K. Currie founded Currie Associates, Inc. ("Currie Associates"), which is a sales representative firm that provides sales services for the automotive industry.

9. Lyn Hurley was employed by Currie Associates from June 6, 1992 through June 21, 2002 where she performed accounting and other administrative duties.

10. Through her employment position with Currie Associates, Lyn Hurley had access to, and was entrusted with, the financial accounts of Currie Associates.

11. During her employment with Currie Associates, Lyn Hurley, with the knowledge, consent and/or participation of Jeffrey Hurley, embezzled at least Three Hundred Forty Thousand Three Hundred Seventy-Five Dollars ($340,375.00) from Currie Associates by impermissibly

- 2 -

writing numerous checks for the benefit of herself, Jeffrey Hurley, Environmental Investigations, Inc. ("Environmental Investigations"), J.D. Hurley & Associates, Inc. f/k/a Site Resources Corporation ("J.D. Hurley") and Hurley Farms, Inc. ("Hurley Farms" and together with Environmental Investigations, J.D. Hurley, and Hurley Farms, collectively, the "Hurley Entities") from Currie Associates' financial accounts.

12.     To cover up the embezzlement, Lyn Hurley forged the signature of authorized representative(s) of Currie Associates and fraudulently entered these transactions in Currie's books and records to cover up her criminal actions.

13.     The Hurleys were officers and/or directors of the Hurley Entities and maintained a 100 percent ownership interest in those entities.

14.     Upon information and belief, Jeffrey Hurley authorized, consented, knew of, and/or otherwise participated in the embezzlement of funds from Currie Associates.

15.     The Hurleys used the embezzled funds for their personal benefit and/or for the benefit of the Hurley Entities.

16.     On June 20, 2002, after discovery of the Hurleys' fraudulent acts, Currie Associates sued the Hurleys and the Hurley Entities in the Lapeer County Circuit Court. The lawsuit was assigned case number 02-0311559 CZ(H) and was assigned to Judge Nick O. Holowka (the "2002 Lawsuit").

17.     On or about July 1, 2002, the Lapeer County Circuit Court entered a stipulated preliminary injunction (a) restraining the Hurleys from dissipating any of their assets without the approval of Currie Associates and (b) ordering the Hurleys to prepare an accounting of their assets (the "Preliminary Injunction"). A copy of the Preliminary Injunction is attached hereto as **Exhibit A.**

18.     The Hurleys and Currie Associates entered into a Settlement Agreement on or about June 30, 2003, thereby resolving the 2002 Lawsuit. A copy of the Settlement Agreement is attached hereto as **Exhibit B**.

19.     Pursuant to the Settlement Agreement, the Hurleys agreed to pay Currie Associates Four Hundred Twenty-Four Thousand Seven Hundred Twenty-Four Dollars ($424,724.00) plus interest at the rate of 8 percent (the "Settlement Amount").

20.     The Hurleys were to pay the Settlement Amount in consecutive monthly payments of principal and interest in the amount of $1,000 per month beginning on July 1, 2003 and continuing on the same day of each consecutive month thereafter. A final payment was due under the Settlement Agreement on June 30, 2006, which due date was subsequently amended to June 30, 2009.

21.     In conjunction with the execution of the Settlement Agreement, the Hurleys also executed several related documents granting Currie Associates security interests in property belonging to the Hurleys and/or the Hurley Entities.

22.     The Settlement Agreement provided, among other things, the following recitation of stipulated facts:

a.  While employed by Currie, Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit, of herself, Jeff Hurley and/or the Corporate Entities [Environmental Investigations, J.D. Hurley, and Hurley Farms] using funds belonging to Currie. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie's books and records so as to conceal her wrongful actions.

b.  During her employment with Currie, Lyn Hurley misappropriated funds from Currie totaling approximately Three Hundred Forty Thousand Three Hundred and Seventy Five Dollars ($340,375.00) (the "Misappropriated Funds").

c.  The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the Corporate Entities.

- 4 -

d. The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the Corporate Entities.

23. On July 10, 2003, the Lapeer County Circuit Court entered a Stipulated Order of Dismissal Without Prejudice, closing the 2002 Lawsuit, but leaving the Preliminary Injunction "in full force and effect until further order of this Court". A copy of the Stipulated Order of Dismissal is attached hereto as **Exhibit C**.

24. The Stipulated Order of Dismissal, contained the following recitation of stipulated facts:

a. Lyn Hurley was employed by Currie [Associates] from June 6, 1992 through June 21, 2002. Lyn Hurley is married to Jeffrey Hurley. The [Hurley] Entities are owned by Hurley.

b. While employed by Currie [Associates], Lyn Hurley was entrusted with access to Currie [Associate]'s checking account and the funds therein.

c. While employed by Currie [Associates], Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit of herself, Jeffrey Hurley and/or the [Hurley] Entities using funds belonging to Currie [Associates]. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie [Associates]. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie [Associates]'s books and records so as to conceal her wrongful actions.

d. During her employment with Currie [Associates], Lyn Hurley misappropriated funds from Currie [Associates] totaling approximately $340,375.00 (the "Misappropriated Funds").

e. The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the [Hurley] Entities.

f. On or about July 1, 2002, a Stipulated Preliminary Injunction was entered by this Court restraining Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of the Order, from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally.

g. The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the [Hurley] Entities.

- 5 -

25. Donald Currie died in 2004. At that time, his interest in Currie Associates passed to the Estate of Donald K. Currie, which assigned its interest in the Settlement Agreement to Plaintiff.

26. The Hurleys defaulted in their obligations under the Settlement Agreement by, among other things, failing to make the full monthly payments since May 2009, and failing to pay all property taxes when due and payable concerning the three real properties which secured the Hurleys' indebtedness, and failing to make a final, full payment on June 30, 2009.

27. Upon information and belief, the Hurleys willfully and intentionally violated the Preliminary Injunction by dissipating, consenting to, and ratifying the dissipation of their and the Hurley Entities' assets.

## COUNT I
## NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)

28. Plaintiff repeats, realleges, and incorporates the preceding allegations as though fully set forth herein.

29. Plaintiff's predecessor in interest entrusted its property to Lyn Hurley, its employee.

30. The Hurleys appropriated that property for a use other than that which is was entrusted.

31. Specifically, Lyn Hurley, with the knowledge, consent, and/or participation of her husband, Jeffrey Hurley, and while working as an employee for Plaintiff's predecessor in interest, embezzled the funds of Plaintiff's predecessor in interest by, among other things, forging checks from the financial accounts of Plaintiff's predecessor in interest and making them payable for the benefit of Lyn Hurley, Jeffrey Hurley, and/or the Hurley Entities.

32. The Hurleys misappropriated the property of Plaintiff's predecessor in interest and used it for their own benefit.

- 6 -

33.     As a result of the Hurleys' embezzlement and/or larceny, the Hurleys owe a debt to Plaintiff for money and/or property.

34.     Accordingly, the Hurleys' debts owing to Plaintiff are nondischargeable.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment in its favor and against the Hurleys for the amount of all debts that the Hurleys owe to Plaintiff, and adjudicating that all debts that the Hurleys owe to Plaintiff are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Plaintiff further requests costs, interest, attorney fees, and any additional relief this Court deems just and proper.

## COUNT II
## NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

35.     Plaintiff repeats, realleges, and incorporates the preceding allegations as though fully set forth herein.

36.     The Hurleys intentionally engaged in a scheme to deprive and/or cheat Plaintiff of its property.

37.     The Hurleys obtained such money and/or property through false pretenses, false representation, and/or actual fraud.

38.     The Hurleys intended to deceive the Plaintiff's predecessor in interest.

39.     As set forth more fully above, Lyn Hurley, with the knowledge consent, and/or participation of her husband Jeffrey Hurley, and while working for Plaintiff's predecessor in interest, engaged in actual fraud by, among other things, forging checks from Plaintiff's predecessor in interest's financial accounts and making them payable for the benefit of Lyn Hurley, Jeffrey Hurley, and/or the Hurley Entities for the Hurleys' personal benefit.

40.     As a result of the Hurleys' fraudulent actions, the Hurleys owe a debt to Plaintiff for money and/or property.

1731047v3

41.     Accordingly, the Hurleys' debts owing to Plaintiff are nondischargeable.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment in its favor and against the Hurleys for the amount of all debts that the Hurleys owe to Plaintiff, and adjudicating that all debts that the Hurleys owe to Plaintiff are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  Plaintiff further requests costs, interest, attorney fees, and any additional relief this Court deems just and proper.

## COUNT III
## NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)

42.     Plaintiff repeats, realleges, and incorporates the preceding allegations as though fully set forth herein.

43.     The Hurleys willfully and maliciously violated the orders of the Courts of the State of Michigan Preliminary Injunction and Stipulated Order of Dismissal by dissipating or ratifying the dissipation of assets.

44.     The Hurleys' intended to cause harm to Plaintiff and/or knew that harm to Plaintiff was substantially certain to result when they violated the terms of the Preliminary Injunction and Stipulated Order of Dismissal.

45.     As a result of the Hurleys' unlawful actions, the Hurleys owe a debt to Plaintiff for money and/or property.

46.     Accordingly, the Hurleys' debts owing to Plaintiff are nondischargeable.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment in its favor and against the Hurleys for the amount of all debts that the Hurleys owe to Plaintiff, and adjudicating that all debts that the Hurleys owe to Plaintiff are nondischargeable pursuant to 11

- 8 -

U.S.C. § 523(a)(6). Plaintiff further requests costs, interest, attorney fees, and any additional relief this Court deems just and proper.

Dated: January 14, 2011

**Donald K. Currie Revocable Trust U/A/D 07/28/1998**

/s/      Stephanie N. Olsen
Daniel Raetchi
Stephanie N. Olsen (P67072)
Counsel for the Creditor
Howard & Howard Attorneys PLLC
450 West Fourth Street
Royal Oak, MI 48067
Telephone:      (248) 672-1483
Facsimile:      (248) 645-1568
Email:  draetchi@howardanhoward.com
          solsen@howardandhoward.com

Mark A. Bogdanowicz
Counsel for the Creditor
Howard & Howard Attorneys PLLC
211 Fulton Street, Suite 600
Peoria, Illinois 61602
Telephone:      (309) 672-1483
Facsimile:      (309) 672-1568
Email: mbogdanowicz@howardandhoward.com

- 9 -

# EXHIBIT A

## STATE OF MICHIGAN

## IN THE CIRUCIT COURT FOR THE COUNTY OF LAPEER

CURRIE ASSOCIATES, INC.,
a Michigan Corporation,

        Plaintiff,

v.

LYN HURLEY AND JEFFREY HURLEY,
jointly and severally

        Defendants.

Case No. 02-031559-CZ(H)
Hon. Nick O. Holowka

_____/

**JEFFREY D. WEISSERMAN (P40470)**
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226
(313) 961-8380

**ROBERT L. STEFANI (P43856)**
Robert L. Stefani, P.C.
Attorney for Defendants
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

_____/

## STIPULATED PRELIMINARY INJUNCTION

    At a session of said Court held in the
    Court House in the County of Lapeer,
    Michigan on:
    _____ 7b-1-02 _____.

    Present: Hon. __NICK O. HOLOWKA__
              Circuit Court Judge

This matter having come before the Court on the Motion by Plaintiff Currie Associates, Inc. ("Currie") for a Preliminary Injunction and the parties' stipulation, the Court having reviewed the materials filed by the parties and being otherwise fully advised;

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of this Order, including without limitation any banks, realtors, prospective purchasers, mortgage companies and/or investment agencies shall be, and hereby are, restrained from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally. This Order shall not be construed to limit Defendants' ability to access funds necessary for everyday living expenses.

IT IS FURTHER ORDERED that Plaintiff may agree, but is under no obligation, to allow disposition of certain limited assets of Defendants without Court approval. Such agreement must be in writing only, and must be signed by counsel for all parties prior to the disposition of any such asset(s).

IT IS FURTHER ORDERED that Defendants shall provide an accounting and identify the whereabouts of the Defendants' assets within fourteen (14) days from the date of this Order. Defendants shall further provide a monthly accounting of all assets used during the duration of this action.

2

IT IS FURTHER ORDERED AND ADJUDGED that this Order shall continue

in effect until further Order of the Court or written stipulation of the parties.

_____
CIRCUIT COURT JUDGE

7/1/02

Stipulated as to form and substance:

_____
Jeffrey D. Weisserman (P40470)
Attorney for Plaintiff
Jaffe, Raitt, Heuer & Weiss
Professional Corporation
One Woodward Avenue, Suite 2400
Detroit, MI 48226
(313) 961-8380

_____
Robert L. Stefani (P43856)
Attorney for Defendants
Robert L. Stefani, P.C.
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

3

IT IS FURTHER ORDERED AND ADJUDGED that this Order shall continue

in effect until further Order of the Court or written stipulation of the parties.

CIRCUIT COURT JUDGE

7/1/02

Stipulated as to form and substance:

Jeffrey D. Weisserman (P40470)
Attorney for Plaintiff
Jaffe, Raitt, Heuer & Weiss
Professional Corporation
One Woodward Avenue, Suite 2400
Detroit, MI 48226
(313) 961-8380

Robert L. Stefani (P43856)
Attorney for Defendants
Robert L. Stefani, P.C.
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

3

# EXHIBIT B

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into as of the **30** day of June, 2003, by and among Currie Associates, Inc. ("Currie"), and Lyn Hurley, Jeffrey Hurley (collectively "Hurley"), Environmental Investigations, Inc., J.D. Hurley & Associates, Inc. f/k/a Site Resource Corporation, and Hurley Farms, Inc. (collectively the "Corporate Entities") (Hurley and the Corporate entities each an "Obligor" and together the "Obligors").

1. **RECITALS.** This Agreement is entered into with reference to the following facts:

A. Lyn Hurley was employed by Currie from June 6, 1992 through June 21, 2002. Lyn Hurley is married to Jeffrey Hurley. The Corporate Entities are owned by Hurley.

B. While employed by Currie, Lyn Hurley was entrusted with access to Currie's checking account and the funds therein.

C. While employed by Currie, Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit of herself, Jeffrey Hurley and/or the Corporate Entities using funds belonging to Currie. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie's books and records so as to conceal her wrongful actions.

D. During her employment with Currie, Lyn Hurley misappropriated funds from Currie totaling approximately Three Hundred Forty Thousand Three Hundred and Seventy Five Dollars ($340,375.00) (the "Misappropriated Funds").

E. The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the Corporate Entities.

F. On or about June 21, 2002, Currie filed an action against Hurley, Case No. 02-031559-CZ(H), pending in the Lapeer County Circuit Court before Honorable Nick O. Holowka (the "Suit").

G. On or about July 1, 2002, a Stipulated Preliminary Injunction was entered by the Lapeer County Circuit Court restraining Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of the Order, from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally.

H.  The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the Corporate Entities.

I.  The parties, in order to avoid further expense and inconvenience resulting from continuing the prosecution and defense of any claims arising out of the Suit, deem it to be in their best interests and to their mutual advantage to settle, adjust and compromise their claims on the terms and conditions hereinafter provided.

2.  CONSIDERATION. In consideration of the execution of this Agreement and the mutual covenants contained herein, as well as the dismissal of the Suit, Hurley and the Corporate Entities agree to pay or cause to be paid to Currie the total sum of $424,724.00, plus interest at the rate of 8% (the "Settlement Sum"), as set forth below. The Settlement Sum is comprised of the Misappropriated Funds ($340,375.00), $60,000.00 for lost interest from the time the Misappropriated Funds were taken through the date of execution of this Agreement, $22,534.00 for Currie's attorneys' fees and costs, $105.00 for Currie's bank fees, and $1,710.00 for Currie's accounting fees.

A.  Hurley promises to pay the Settlement Sum as evidenced by a Promissory Note in favor of Currie, dated June 30 2003 (the "Note", a copy of which is attached as Exhibit A).

B.  Upon the sale of Hurley's current residence at 345 E. Oregon Road, Lapeer, Michigan, 48446, Hurley shall immediately pay to Currie at least the sum of $90,000.00. This payment will be made at closing. Hurley acknowledges and represents that the residence is currently for sale with an asking price of $199,900.00, and that they will make their best efforts to sell the residence for an amount equal to or in excess of that amount. Hurley further acknowledges and represents that Currie will be kept apprised of all offers on the residence, and that Currie will have the right to approve any offers or reject any offers Currie believes are insufficient. The intent of this subparagraph is that regardless of the purchase price of this property, Hurley shall pay to Currie at least the sum of $90,000.00 at closing, as well as such other funds as may be available upon that sale.

C.  Upon the sale of at least 35 acres of certain property owned by Hurley on Wilson Road in Columbiaville, Michigan, Hurley shall immediately pay to Currie the sum of $120,000.00. This payment will be made at closing. Hurley acknowledges and represents that 35 acres of this property are currently for sale with an asking price of $210,00.00, and that they will make their best efforts to sell the property for an amount equal to or in excess of that amount. Hurley further acknowledges and represents that Currie will be kept apprised of all offers on this property, and that Currie will

2

have the right to approve any offers or reject any offers Currie believes are insufficient. Hurley further acknowledges and represents that Currie may, from time to time during the duration of this Agreement, demand that further and/or other acreage owned by Hurley on Wilson Road in Columbiaville, Michigan, be placed for sale at a price commensurate with its market value in order to create sufficient funds to repay Currie some or all of the Settlement Sum. The intent of this subparagraph is that regardless of the purchase price of this property, Hurley shall pay to Currie at least the sum of $120,000.00 at closing, as well as such other funds as may be available upon that sale.

D.    No later than June 30, 2006 (three years after the date of execution of this Agreement), Hurley shall pay to Currie all amounts due and owing under this Agreement, together with all unpaid interest. This payment is intended to be a final payment of any part of the Settlement Sum, plus interest, which have not been paid in full as of June 30, 2006. Hurley and the Corporate Entities acknowledge and represent that their inability to sell any property shall not be considered an excusable reason not to pay all amounts due and owing at that time, and that the full Settlement Sum, less any amounts of principal already paid, shall be paid in full on that date.

E.    Immediately upon execution of this Agreement, Hurley shall make payments to Currie in the amount of $1,000.00 on the first day of each month, continuing until all amounts due hereunder are paid in full. Such payments shall be credited half to interest accruing under this agreement, and half to principal.

3.    SECURITY DOCUMENTS. All obligations hereunder shall be secured by the following:

A.    A Mortgage granted to Currie on the residential real property located at 345 E. Oregon Road, Lapeer, MI 48446 in the form attached hereto as Exhibit B.

B.    An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the 75 acre parcel of real property located at 5378 Wilson Road, Columbiaville, MI in the form attached hereto as Exhibit C.

C.    An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the 10 acre parcel of real property located on Wilson Road in Columbiaville, MI in the form attached hereto as Exhibit D.

D.    An Assignment of Purchaser's Interest in Land Contract as Security granted to Currie on the real property located at 303 W. Nepessing Street, Lapeer, Michigan, 48446 in the form attached hereto as Exhibit E.

E.    An Assignment of Leases and Rents granted to Currie on the real property located at 303 W. Nepessing Street, Lapeer, Michigan, 48446 in the form attached hereto as Exhibit F.

F.    A Security Agreement and Financing Statement covering all assets owned by Hurley in the form attached hereto as Exhibit G.

G.    A Security Agreement and Financing Statement covering all assets owned by Environmental Investigations, Inc. in the form attached hereto as Exhibit H.

H.    A Security Agreement and Financing Statement covering all assets of J.D. Hurley & Associates, Inc f/k/a Site Resource Corporation in the form attached hereto as Exhibit I.

I.    A Security Agreement and Financing Statement covering all assets of Hurley Farms, Inc. in the form attached hereto as Exhibit J.

J.    A Guaranty of all obligations hereunder executed by each of the Corporate Entities in the form attached hereto as Exhibit K.

K.    A Pledge Agreement granting Hurley's ownership interests in the Corporate Entities in the form attached hereto as Exhibit L.

L.    Such further documents as Currie may reasonably feel are necessary to protect and secure the obligations owed to it, including UCC documents, financing statements, etc.

(together with the Note, the "Security Documents").

4.    DEFINITION OF INDEBTEDNESS. "Indebtedness," in this Agreement and the Security Documents, shall mean all of the obligations of the Obligors under this Agreement, including without limitation the Settlement Sum, the Security Documents, and all obligations of any and every kind and nature heretofore, now or hereafter owing from the Obligors to Currie, however incurred or evidenced, or by oral agreement or by operation of law plus all interest, costs, expenses and reasonable attorney fees which may be made or incurred by Currie in the disbursement, administration or collection of such obligations, the enforcement of this Agreement, and in the protection, maintenance and liquidation of any collateral.

5.    DISMISSAL OF SUIT. Upon execution of this Agreement, the parties shall cause their attorneys to file with the Court a stipulated order of dismissal without prejudice and continuing the Preliminary Injunction, in the form attached as Exhibit M. Ninety one days after full and final payment of the Settlement Sum, and assuming no bankruptcy proceeding has

4

been filed by Hurley and/or the Corporate Entities, the parties shall cause their attorneys to file with the Court a stipulated order in the form attached as Exhibit N, causing that dismissal to become one with prejudice, and dismissing the Preliminary Injunction.

6. MUTUAL RELEASES. In consideration of the payment, actions and representations set forth above, as well as the execution of this Agreement under the terms herein, and subject to all of the obligations contained hereunder, Currie, in all of its capacities, on behalf of itself and any other party, person or entity claiming under or through it, each of their successors, assigns, agents, employees, officers, directors, shareholders, parents, subsidiaries of parents, subsidiaries, affiliates, fiduciaries, beneficiaries, trustees, heirs and representatives, hereby releases, discharges and acquits Hurley and the Corporate Entities, as well as each of their agents, attorneys, accountants, banks, financial advisors, officers, directors, predecessors, parents, subsidiaries of parents, shareholders, subsidiaries, affiliates, successors, heirs, personal representatives and assigns, from all claims, debts, demands, defenses, actions, causes of action, suits, dues, sums of money, accounts, bonds, warranties, covenants, contracts, controversies, promises, agreements or obligations of any kind relating or referring to the matters contained within the Suit. Hurley and the Corporate Entities acknowledge that they understand that this release is not effective until 91 days after the final payment of the Settlement Sum, assuming no bankruptcy proceeding has been filed by Hurley and/or the Corporate Entities.

In consideration of the payment, actions and representations set forth above, as well as the execution of this Agreement under the terms herein, Hurley and the Corporate Entities, in all of their capacities, on behalf of themselves and any other party, person or entity claiming under or through them, each of their successors, assigns, agents, employees, officers, directors, shareholders, parents, subsidiaries of parents, subsidiaries, affiliates, fiduciaries, beneficiaries, trustees, heirs and representatives, hereby releases, discharges and acquits Currie, as well as each of their agents, attorneys, accountants, banks, financial advisors, officers, directors, predecessors, parents, subsidiaries of parents, shareholders, subsidiaries, affiliates, successors, heirs, personal representatives and assigns, from all claims, debts, demands, defenses, actions, causes of action, suits, dues, sums of money, accounts, bonds, warranties, covenants, contracts, controversies, promises, agreements or obligations of any kind relating or referring to the matters contained within the Suit, whether individually, jointly or severally, and whether known or unknown as of this date.

7. REPRESENTATIONS AND WARRANTIES. In making and executing this Agreement, the parties represent, warrant and agree as follows:

A. The parties have each received independent legal advice from their attorneys with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

B. The parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other parties hereto with respect to such matter.

5

C. All information provided to Currie by Hurley or the Corporate Entities used to prepare this Agreement or the Security Documents is true and correct.

D. Jeffrey Hurley and Lynn Hurley own the property commonly called 345 E. Oregon, Road, Lapeer, Michigan 48446 as husband and wife.

E. Hurley holds a 100% ownership interest in the Corporate Entities.

F. A certain asset list provided by Hurley to Currie on or about July 12, 2002 was true, accurate and complete when made and is true, complete and accurate as of the date of the execution of this Agreement.

8. NONDISCHARGEABILITY. Hurley and the Corporate Entities agree that they will not object to the nondischargeability of the obligations set forth herein, including without limitation all payments and security made or given hereunder, in any subsequent bankruptcy of Lyn Hurley, Jeffrey Hurley, or any of the Corporate Entities, or to the filing of this Agreement in any proceeding to enforce any provision of this Agreement.

9. EXECUTION OF FURTHER DOCUMENTS. The parties agree that they will execute such further documents as may be necessary to effectuate the intent of this Agreement.

10. TAXES. Hurley and the Corporate Entities agree that they will hold harmless and indemnify Currie for and against any charges or assessments which may be brought or levied against Currie relative to any federal, state, and/or local incomes taxes, or other taxes or payments of any kind which may be required to be paid on account of Currie's receipt of the Consideration described in Paragraph 2 above, including but not limited to payment of all reasonable attorneys' fees and costs incurred by Currie in obtaining the full payment or reimbursement of any taxes, interest and/or tax penalties.

11. DEFAULT. Hurley and the Corporate Entities, without notice or demand of any kind, shall be in default under this Agreement upon the occurrence of any of the following events (each an "Event of Default"):

A. Any Indebtedness is not paid when due.

B. Any oral or written warranty, representation, certificate or statement, in this Agreement or the Security Documents, including paragraph [6] of this Agreement, shall be false when made or at any time.

C. Any failure to perform in the performance of any covenant, condition or agreement contained in this Agreement or in the Security Documents or any other agreement with Currie.

6

D. Any Obligor makes an assignment for the benefit of creditors, fails to pay, or admits in writing its inability to pay its debts as they mature.

E. Any proceeding involving any Obligor is commenced by or against such Obligor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute of federal government or any state government.

F. The entry of any judgment, decree, levy, attachment, garnishment or other process, or the filing of any judgment lien against any Obligor which is not fully covered by insurance.

G. The death of any Obligor who is a natural person.

H. The determination by Currie that a material adverse change has occurred in the financial condition of any Obligor.

12. **RIGHTS UPON EVENT OF DEFAULT.** Upon an Event of Default, Currie may immediately take such steps or avail itself of such rights as may be available to it under this Agreement or the Security Documents.

13. **INTEGRATION.** This Agreement, along with the Security Documents, constitutes a single, integrated written contract expressing the entire agreement between the parties hereto. There are no other agreements, written or oral, expressed or implied, between the parties hereto, except as set forth in this Agreement.

14. **CONFIDENTIALITY.** The terms and conditions of this Agreement and the basis for any claims and negotiations leading to it will be kept confidential and will not be communicated to any other person or entity, except as required by law, and except on a limited basis as required for financial or other required disclosure.

15. **SEVERABILITY.** Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state law, federal law or any other applicable law, the validity and enforceability of the remaining portions or provisions of this Agreement shall not be affected thereby.

16. **DOCUMENT PREPARATION.** Each of the parties hereto has joined in and contributed to drafting this Agreement and each of the parties hereto hereby agrees that there shall be no presumption favoring or burdening any one or more parties hereto based upon draftsmanship.

17. **COUNTERPARTS.** This Agreement may be executed in counterparts, each of which shall be deemed equally authentic. This Agreement will be deemed effective when signed by all parties hereto.

7

18.     BINDING EFFECT. This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors, heirs, personal representatives and assigns.

19.     NO WAIVER. No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

20.     GOVERNING LAW. This Agreement shall be deemed to have been executed and delivered within the State of Michigan, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Michigan without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

WITNESS

Currie Associates, Inc.

By: _____

Its:_____

Lyn Hurley

Jeffrey Hurley

Environmental Investigations, Inc.

By: _____

Its:_____ PRESIDENT

J.D. Hurley & Associates, Inc. f/k/a
Site Resource Corporation

By: _____

Its: _____ PRESIDENT

Hurley Farms, Inc.

By: _____

Its: _____ PRESIDENT

924430v2

9

## SETTLEMENT AND RELEASE AGREEMENT AMENDMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT AMENDMENT ("SRA AMENDMENT")** is made by and between Currie Associates, Inc. ("Currie"), and Lyn Hurley, Jeffery Hurley (collectively "Hurley"), Environmental Investigations, Inc., J.D. Hurley & Associates, Inc. f/k/a Site Resource Corporation, and Hurley Farms, Inc. (collectively the "Corporate Entities") (Hurley and the Corporate Entities each an "Obligor" and together the "Obligors").

## RECITALS:

**WHEREAS,** the undersigned parties are all of the original parties to a certain SETTLEMENT AND RELEASE AGREEMENT dated June 30, 2003 (the "SRA") (a copy which is attached and incorporated herein by reference); and

**WHEREAS,** all of the parties now desire to amend the SRA for the purposes of extending a certain payment provision, reaffirming certain debts, and reaffirming all of the written agreements made by and amongst the parties to and in the SRA;

**NOW, THEREFORE,** in consideration of the foregoing recitals, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT:

1. **Extended Payment Term.** Paragraph 2.D. of the SRA is deleted in its entirety and a new Paragraph 2.D. is hereby substituted for the same which shall read in full as follows:

> No later than June 30, 2009 (six years after the date of execution of this Agreement). Hurley shall pay to Currie all amounts due and owing under this Agreement, together with all unpaid interest. This payment is intended to be a final payment of any part of the Settlement Sum, plus interest, which have not been paid in full as of June 30, 2009. Hurley and the Corporate Entities acknowledge and represent that their inability to sell any property shall not be considered an excusable reason not to pay all amounts due and owing at that time, and that the full Settlement Sum, less any amounts of principal already paid, shall be paid in full on that date.

2. **Full Force and Effect.** The SRA (as amended by this SRA AMENDMENT) and all Exhibits attached thereto, shall, in all other respects, remain in full force and effect.

3. **Ratification.** Each of undersigned reaffirms, ratifies, confirms, and approves his, her, and its respective obligations and duties under the SRA and all Exhibits attached thereto as modified by this SRA AMENDMENT.

1

4.    [INTENTIONALLY DELETED.]

5.    **Additional Representations.**  Each of the Obligors represents and warrants to Currie that:

(a)    (i)    Obligors execution, delivery, and performance of this SRA AMENDMENT and all agreements and documents attached hereto have been duly authorized by all necessary entity action and do not and will not require any consent or approval of its shareholders, violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination, or award presently in effect having applicability to it or of its articles of incorporation or by-laws, or result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Obligor is a party or by which it or its properties may be bound or affected;

(ii)    No authorization, consent, approval, license, exemption of or filing a registration with any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, is or will be necessary to the valid execution, delivery, or performance by the Obligors of this SRA AMENDMENT and all agreements and documents attached hereto; and

(iii)    This SRA AMENDMENT and all of the documents attached hereto by any one or more of the parties (other than Currie) are the legal, valid, and binding obligations of each such party enforceable against each such party in accordance with the terms thereof.

(b)    After giving effect to the amendments contained herein and effected in accordance herewith, all representations and warranties contained in the SRA and the Exhibits attached hereto are true and correct on and as of the date hereof with the same force and effect as if made on and as of the date hereof.

(c)    None of the Obligors or any one or more of them has assigned any claim, set off, or defense to any individual or entity.

(d)    This SRA AMENDMENT, the SRA and all Exhibits attached thereto, and all of the other written material delivered by any one or more of the Obligors to Currie in connection with the transactions contemplated hereby do not contain any statement that is false or misleading with respect to any material fact and do not omit to state a material fact necessary in order to make the

2

statements therein not false or misleading. There is no additional fact of which any party is aware that has not been disclosed in writing to Currie that materially affects adversely or, so far as each party can reasonably foresee, will materially affect adversely any party's financial condition, business prospects, or any property any of the Obligors has an interest in.

6. **Assignment.** This SRA AMENDMENT, the SRA and all Exhibits attached thereto, may not be assigned by any Obligor without the express written consent of Currie. In the event Currie desires to sell, assign, or otherwise transfer any or all of its right, title, and interest in and to any or all of the SRA (as amended by this SRA AMENDMENT) and all Exhibits attached thereto, or any of the property that is the subject matter of the SRA, Obligors agree:

> (i) not to raise any objection or defense to any such sale, assignment, or transfer;

> (ii) to waive any and all defenses one or more of the Obligors may have now or in the future to such a sale, assignment, or transfer; and

> (iii) to execute such further documents as may be reasonably necessary to effectuate such sale, assignment, or transfer including, but not limited to, executing (a) documents informing the Lapeer County Circuit Court that such a sale, assignment, or transfer has taken place, and that Obligors do not to raise any objection or defense to any such sale, assignment, or transfer, and (b) such other documents as may be reasonably required by any purchaser, assignee, or transferee acknowledging and ratifying Obligors' obligations to purchaser, assignee, or transferee subsequent to the sale, assignment, or transfer.

7. **Document Preparation.** Each of the parties hereto has joined in and contributed to drafting the SRA AMENDMENT and each of the parties hereto hereby agrees that there shall be no presumption favoring or burdening any one or more parties hereto based upon draftsmanship.

8. **Counterparts.** This SRA AMENDMENT may be executed in counterparts, each of which shall be deemed equally authentic. This SRA AMENDMENT shall be deemed effective when signed by all parties hereto.

9. **Governing Law.** This SRA AMENDMENT shall be deemed to have been executed and delivered within the State of Michigan, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Michigan without regard to principles of conflict of laws.

**THIS SRA AMENDMENT** is entered into on this 29 day of November, 2006.

Witnesses:

**Currie Associates, Inc.,**
a Michigan corporation

name: THOMAS G. PLUNKETT

by:
name:   Scott Currie
as:     President

name: _____

Lyn Hurley

name: _____

Jeffrey Hurley

**Environmental Investigations, Inc.**

name: _____

By:
Its:    President

**J.D. Hurley & Associates, Inc., f/k/a**
**Site Resource Corporation**

name: _____

By:
Its:    President

**Hurley Farms, Inc.**

name: _____

By:
Its:    President

4

# EXHIBIT C

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF LAPEER

CURRIE ASSOCIATES, INC.,
a Michigan Corporation,

    Plaintiff,

    v.

Case No. 02-031559-CZ(H)
Hon. Nick O. Holowka

LYN HURLEY AND JEFFREY HURLEY,
jointly and severally

    Defendants.

---

**JEFFREY D. WEISSERMAN** (P40470)
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226
(313) 961-8380

**ROBERT L. STEFANI** (P43856)
Robert L. Stefani, P.C.
Attorney for Defendants
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929



---

## STIPULATED ORDER OF DISMISSAL WITHOUT PREJUDICE

At a session of said court held in
the City of Lapeer, County of Lapeer
State of Michigan, on _7-10-03_

Present: Hon._____
                    CIRCUIT COURT JUDGE

This matter is entered with respect to the following facts:

A.    Lyn Hurley was employed by Currie from June 6, 1992 through June 21, 2002.
Lyn Hurley is married to Jeffrey Hurley. The Corporate Entities are owned by
Hurley.

0887070.02

B.    While employed by Currie, Lyn Hurley was entrusted with access to Currie's checking account and the funds therein.

C.    While employed by Currie, Lyn Hurley, with the knowledge of Jeffrey Hurley, wrote numerous checks for the benefit of herself, Jeffrey Hurley and/or the Corporate Entities using funds belonging to Currie. In so doing, Lyn Hurley forged the signature of an authorized representative of Currie. Further, in so doing, Lyn Hurley fraudulently entered these transactions in Currie's books and records so as to conceal her wrongful actions.

D.    During her employment with Currie, Lyn Hurley misappropriated funds from Currie totaling approximately $340,375.00 (the "Misappropriated Funds").

E.    The Misappropriated Funds were used, directly or indirectly, for the benefit of Hurley and/or the Corporate Entities.

F.    On or about July 1, 2002, a Stipulated Preliminary Injunction was entered by this Court restraining Defendants and all of their respective agents, employees, servants, attorneys and all others with actual knowledge of the Order, from dissipating, transferring, secreting or assigning any of the Defendants' assets, whether held jointly or severally.

G.    The facts set forth hereunder are intended to have collateral estoppel effect in any bankruptcy proceeding involving Lyn Hurley, Jeffrey Hurley and/or any of the Corporate Entities.

H.    The parties, in order to avoid further expense and inconvenience resulting from continuing the prosecution and defense of any claims arising out of the Suit, deem it to be in their best interests and to their mutual advantage to settle, adjust and compromise their claims on the terms and conditions set forth in a certain Settlement Agreement dated June 30, 2003.

**NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that this matter shall be and hereby is dismissed without prejudice. The Stipulated Preliminary Injunction dated July 1, 2002 shall remain in force and effect until further order of this Court. The Court retains jurisdiction of this matter to enforce the Stipulated Preliminary Injunction and any other orders of the Court.

CIRCUIT COURT JUDGE

7/10/03

JAFFE RAITT HEUER & WEISS, P.C.

0887070.02

Stipulated as to form and substance:


_Melanie L. Fave_
MELANIE LAFAVE (P27777)
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, Michigan 48226
(313) 961-8380


_Robert L. Stefani_
ROBERT L. STEFANI (P43856)
Robert L. Stefani, P.C.
Attorney for Defendants
200 E. Big Beaver Rd.
Troy, MI 48083
(248) 554-9929

JAFFE RAITT HEUER & WEISS, P.C.

0887070.02